# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**THOMAS M. MORTIMER,**

      Petitioner,

v.                                             **CIVIL ACTION NO. 3:06-CV-130**
                                                     **(BAILEY)**

**DOMINIC GUTIERREZ,**

      Respondent.

## ORDER

### I.    Introduction

On this day, the above-styled matter came before the Court for consideration of Petitioner's Emergency Motion for Reconsideration of Final Order From a Motion Pursuant to 28 U.S.C. § 2241 [Doc. 11] filed on July 12, 2007. The petitioner seeks reconsideration of this Court's July 3, 2007, Order Adopting Report and Recommendation [Doc. 10]. The Court also considered similar filings [Docs. 12, 13, 14, & 15]. Having reviewed the above, it is the opinion of this Court that these motions should be, and are, hereby **GRANTED**.

This petitioner seeks relief in the form of placement in a CCC for the final six months of his sentence. The Court had previously denied his petition as the Court was under the false impression that it was not ripe because it thought the petitioner had not yet been considered for CCC placement. Having confirmed that the petitioner has in fact been considered, and was recommended for placement for approximately ten percent of his sentence, this petition is now ripe.

### II.    Contentions of the Parties

Petitioner raises the following ground in his Application for Habeas Corpus:

(1) The Bureau of Prisons' policy of transferring prisoners to a CCC for the last 10% of their term of imprisonment has been ruled unconstitutional.

The Government contends that the petition should be dismissed because:

(1) Petitioner has failed to exhaust his administrative remedies;

(2) The facts of the complaint are not yet ripe for review;

(3) The February 2005 Rules are valid and entitled to substantial deference; and

(4) The Bureau properly exercised its discretion in a categorical manner by limiting placement in CCC's to the last ten percent of an inmate's sentence served, not to exceed six months.

### III. Historical Background

Prior to December 2002, the BOP had a policy of placing prisoners in a CCC for up to six months, regardless of the total length of the inmate's sentence. *See* BOP Program Statement 7310.04. However, on December 13, 2002, the Office of Legal Counsel for the Department of Justice issued a memorandum stating that this practice was inconsistent with 28 U.S.C. § 3624(c) which, in its opinion, limited an inmate's placement in a CCC to the lesser of six months or ten percent of the inmate's sentence. Section 3624(c) provides as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable

opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

The BOP adopted the Office of Legal Counsel's interpretation of the statute, and numerous habeas petitions challenging the December 2002 Policy were filed. The First and Eighth Circuits, as well as many district courts,[1] found the policy contrary to the plain meaning of 18 U.S.C. § 3621(b), which states:

The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

---

[1] *See* **Goldings v. Winn**, 383 F.3d 17 (1st Cir. 2004); **Elwood v. Jeter**, 386 F.3d 842 (8th Cir. 2004); **Cato v. Menifee**, 2003 WL 22725524 at *4 (S.D.N.Y. Nov. 20, 2003) (collecting cases).

(4) any statement by the court that imposed the sentence -

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994 (a) (2) of title 28.

In response to those decisions, the BOP created new regulations in 2005 governing the placement of inmates in CCCs. These regulations state that the BOP was engaging in a "categorical exercise of discretion" and choosing to "designate inmates to [CCC] confinement . . . during the last ten percent of the prison sentence being served not to exceed six months." 28 C.F.R. § 570.20- 21. The new regulation expressly prohibits placement of prisoners in CCCs prior to the pre-release phase of imprisonment and provides:

When will the **Bureau designate** inmates to **community** confinement?

(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the **last ten percent** of the **prison sentence being served**, not to exceed six months.

(b) We may exceed the time-frames only when specific Bureau programs allow greater periods of community confinement, as

>provided by separate statutory authority (for example, residential substance abuse treatment program . . . or shock incarceration program) . . .

28 C.F.R. § 570.21. (Emphasis added)

It is this regulation which prompts the petitioner's habeas challenge in the instant case.

## IV. Analysis

### A. Exhaustion

The petitioner admits that he has not exhausted his administrative remedies alleging that raising his claim through the internal grievance system would be moot because the issues raised in the petition can only be resolved in the United States District Court. Federal inmates generally are required to exhaust their administrative remedies prior to filing a § 2241 petition. *See, e.g.*, **Martinez v. Roberts**, 804 F.2d 570 (9th Cir. 1996); **Moscato v. Federal Bureau of Prisons**, 98 F.3d 757 (3d Cir. 1996); **Colton v. Ashcroft**, 299 F.Supp. 2d 681 (E.D. Ky (2004). However, a number of courts have found that requiring inmates to challenge the BOP's policy regarding placement in a CCC through the administrative process would be futile. *See, e.g.*, **Fagiolo v. Smith**, 326 F. Supp.2d 589, 590 (M.D. Pa. 2004)("exhaustion would be futile because the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. § 3624(c); **Zucker v. Meinfee**, 2004 WL 102779 (S.D.N.Y. Jan 21, 2004)("[G]iven the subordinate relation of the highest level of administrative appeal to the source of the interpretation at issue in this case" the petitioner's failure to exhaust was excused as being futile).

To the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. For this reason, it follows that a Court has the discretion to waive that requirement in certain circumstances. *See* **LaRue v. Adams**, 2006 WL 1674487 *8 (S.D.W.Va. June 12, 2006) (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions). Here, it is not disputed that the petitioner failed to exhaust his administrative remedies prior to filing suit in this Court. However, exhaustion would be futile in this instance "because the BOP has adopted a clear and inflexible policy regarding its interpretation of 18 U.S.C. § 3624(c)." **Fagiolo v. Smith**, 326 F.Supp.2d at 590. Accordingly, this Court **finds** that exhaustion is waived and that the case proceed to a determination on the merits.

### B. Whether Petition Raises Issues Which Are Ripe for Adjudication

The Supreme Court has recognized that "[t]he ripeness doctrine 'is drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" **Nat'l Park Hospitality Ass'n v. Dep't of Interior**, 538 U.S. 803, 807 (2003). "The central concern of both power and discretion is that the tendered case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." **Metzenbaum v. Fed. Energy Regulatory Comm'n**, 675 F.2d 1282, 1289-1290 (C.A.D.C. 1982) (citations omitted). The basic rationale of ripeness is

> to prevent the courts, through avoidance of premature adjudication,

> from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a two-fold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

***Abbott Laboratories v. Gardner***, 387 U.S. 136, 148-49 (1967) (overruled on other grounds). Since the initiation of this case, the BOP has made a formal recommendation as to the petitioner's CCC placement. Accordingly, this case is now ripe for adjudication.

### C. The Constitutionality and Validity of the 2005 Rules

#### 1. Petitioner's contentions

In his petition, the petitioner asserts that he was told by his counselor, that as a matter of policy, he could not be transferred to a CCC until February 13, 2008, or approximately the last 10% of his twenty four month sentence, for which his anticipated release date is May 1, 2008. The petitioner asserts that such policy has been ruled unconstitutional by the Second, Third and Eighth Circuits and he is being unlawfully denied transfer to a CCC for the last six months of his sentence. As relief, the petitioner request the Court grant his writ and order the BOP to transfer him to a CCC for the last six months of his sentence.

In support of his claims, the petitioner asserts that the BOP's 10% policy represents a categorical rule which places durational limits on CCC confinement. The petitioner asserts such rule contradicts the plain meaning of 18 U.S.C. § 3621(b) and has been found

unlawful by the Second, Third and Eighth Circuits because it contravenes unambiguously expressed congressional intent and the ex post facto clause of the United States Constitution. In addition, although the petitioner concedes that the BOP has discretion under § 3621(b) to make placement determinations, the petitioner asserts that § 3621(b) sets specific parameters which limit that discretion. Therefore, the petitioner asserts that the BOP may not implement categorical rules which do not take into account the limits of its discretion.

## 2. Pertinent Case Law

The Third Circuit Court of Appeals was the first Court of Appeals to address the issue raised in the instant case. In ***Woodall v. Federal Bureau of Prisons***, 432 F.3d 235 (3d Cir. 2005), the Third Circuit recognized that the various district courts to address this issue were split as to the validity of the BOP's 2005 regulations. *See **Woodall*** at 244 (collecting cases). However, after analyzing the conflicting opinions, the Third Circuit found the regulation unlawful. *Id*. Specifically, the Third Circuit found that the governing statute, 18 U.S.C. § 3621(b), "lists five factors that the BOP must consider in making placement and transfer determinations. The 2005 regulations, which categorically limit the amount of time an inmate may be placed in a Community Corrections Center ("CCC"), do not allow the BOP to consider these factors in full." *Id*. at 237. More specifically, the Court noted:

> [t]he regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621,

>these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

*Id*. at 244.

In reaching this conclusion, the Third Circuit rejected the same arguments made by the respondent in this case. Moreover, the three other Courts of Appeals who have addressed this issue have made similar findings. *See* **Wedelstedt v. Wiley**, 477 F.3d 1160 (10th Cir. 2007); **Levine v. Apker**, 455 F.3d 71, 85-87 (2d Cir. 2006); **Fults v. Sanders**, 442 F.3d 1088, 1092 (8th Cir. 2006). Therefore, although none of the Circuit opinions have been unanimous, and in fact, there were strong dissents in each case,[2] the clear weight of authority at this time suggests that the regulations are invalid. Upon a review of those cases, including the dissenting opinions, this Court is persuaded that the regulations are invalid for the reasons set forth in **Woodall**, **Fults**, **Levine** and **Wedelstedt**.

### 3. Discussion

---

[2] *See* **Wedelstedt**, 477 F.3d at 1169-71 (Hartz, Circuit Judge, dissenting)(agreeing that § 3621 requires the BOP to consider each of the five enumerated factors, but finding that the BOP properly performed such duty when it reasonably considered each of the five factors in promulgating its general rule) ; **Levine**, 455 F.3d at 87-91 (Raggi, Circuit Judge, dissenting) (construing the rule as "a permissible categorical rejection of CCCs as appropriate and suitable facilities for § 3621(b) designations generally" with limited statutorily identified exceptions including "those catalogued in § 3621(b)," finding the rule comports with § 3624(c)'s express time limitations, and finding **Lopez** supports the Bureau's "categorical rejection of CCCs for general § 3621(b) designations (i.e., placements not involving § 3624(c) or other statutory concerns)"); **Fults**, 442 F.3d at 1093 (Riley, Circuit Judge, dissenting ) (finding that the "BOP's categorical rules governing transfer of inmates to CCCs, and implementing section 3624(b), do not conflict with the factors enumerated in section 3621(b)"); **Woodall**, 432 F.3d at 251-52 (Fuentes, Circuit Judge, dissenting) (agreeing that § 3621(b) requires the BOP to consider each of the five enumerated factors listed in the statute, but finding that the BOP is not required to consider the factors until the inmate is actually considered for transfer and that such consideration is not required "until the lesser of six months or ten percent of the inmate's sentence remains").

The language of § 3621 is clear. Each of the five enumerated factors must be considered by the BOP in making placement and transfer determinations. The 2005 regulations simply do not allow the BOP to consider the three individualized factors. Those factors include the nature and circumstances of the offense, the history and characteristics of the prisoner, and any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted, or recommending a type of penal or correctional facility as appropriate. *See* 18 U.S.C. § 3621(b)(2)-(4). Accordingly, the Court need not go past the first step of the **Chevron** analysis. Even if it could, the BOP's interpretation is contrary to the statute and is not due deference.

Moreover, this Court agrees that **Lopez v. Davis**, *supra*, fails to support the BOP's categorical decision-making at question in this case. In **Lopez**, the Supreme Court upheld the validity of a BOP rule excluding certain inmates from early release under 18 U.S.C. § 3621(e)(2)(B). **Lopez**, 531 U.S. at 243-44. Under that statute, the BOP has been given the discretion to reduce the prison term of an inmate convicted of a "non-violent" offense if the inmate successfully completes a substance abuse program. *Id*. at 232. Because the statute does not define what constitutes a "nonviolent" offense, the BOP implemented a regulation categorically denying early release to prisoners convicted of a felony involving "the carrying, possession, or use of a firearm." *Id*. The **Lopez** Court upheld the categorical decision making of the BOP because the statute does not define the term "nonviolent offense," and at the same time, gives the BOP the discretion to determine which inmates are offered pre-release. *Id*. 235-238. Therefore, the Court reasoned that it was permissible for the BOP to use its discretion to define the term "nonviolent offense" and to

categorically exclude certain inmates for early release consideration based on that definition. *Id*. The Court's decision though, was clearly grounded in the discretion afforded the BOP under the statute and the ambiguity in defining what constitutes a nonviolent offense. None of those factors are at play in the instant case.

Although the BOP does have some discretion under § 3621(b) in determining the actual place of an inmate's confinement, the BOP is required to consider each of the five factors before making placement and transfer determinations. There is no ambiguity that the BOP can or must define. In addition, *Lopez* is further distinguishable because § 3621(e)(2)(B) does not require the BOP to make individualized determinations as does § 3621(b). However, individualized determinations are not necessarily dispositive of the issue. In *Lopez*, the Court stated that "[e]ven if a statutory scheme requires individualized determinations . . . the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." *Lopez*, 531 U.S. 243-44 (internal quotations omitted). Nonetheless, sentencing recommendations and the history and characteristics of the prisoner are not generally applicable. Moreover, Congress does "appear to express an intent to withhold from the BOP the authority to make CCC placements without the guidance of the statutory factors." *Woodall*, 432 F.3d at 247.

Although this Court agrees with the four Courts of Appeals and believes the petitioner's writ of habeas corpus should be granted, the petitioner is advised that such decision does not entitle him to an Order from this Court directing that he be immediately transferred to a CCC. The Court has determined that the BOP's regulations are invalid only to the extent that his placement in a CCC is limited to the lesser of 10% of his sentence,

or six months, without consideration of the five factors set forth in 18 U.S.C. § 3621(b). Thus, in granting the instant writ, petitioner is merely entitled to have his CCC placement considered in accordance with the five factors set forth in § 3621(b).

**V.**     **Conclusion**

Having reviewed the petitioner's motion for reconsideration [Doc. 11] and similar filings [Docs. 12, 13, 14, & 15] it is the opinion of this Court that the same should be, and are, hereby **GRANTED**. Accordingly, this Court **GRANTS** petitioner's application under 28 U.S.C. § 2241 [Doc. 1], and **ORDERS** the BOP to comply with this Court's rulings herein. As such, this Court's previous Order Adopting Report and Recommendation [Doc. 10] is hereby **VACATED**. The Court further requests that the BOP handle this matter expeditiously as the petitioner may become eligible for placement soon. As a final matter, the petitioner's Motion for Default Judgment [Doc. 6] is hereby **DENIED as moot**.

It is so **ORDERED**.

The Clerk is directed to mail a certified copy of this Order to all counsel of record, and the *pro se* petitioner.

**DATED:** October 4, 2007.

JOHN PRESTON BAILEY
UNITED STATED DISTRICT JUDGE